**Hannah Marie MORRISON, Administratrix of the Estate of Betty Ann Gray, Appellant,**

v.

**Rafael C. CHAN, Moncrief Radiation Center, Radiation Therapy and Chemotherapy Associates, and Radiation Center, Appellees.**

No. 2–83–050–CV.

Court of Appeals of Texas, Fort Worth.

March 22, 1984.

Rehearing Denied April 19, 1984.

Timothy E. Kelley and John W. Henvey, Dallas, for appellant.

Cantey, Hanger, Gooch, Munn & Collins, and Rod Patterson, Garrett & Settle, and Peveril O. Settle, III, Fort Worth, for appellees.

OPINION

JORDAN, Justice.

This appeal is from a summary judgment granted all defendants in the trial court in

a medical malpractice case. The summary judgment was granted on the basis of the statute of limitations presently applicable in medical malpractice cases, TEX.REV. CIV.STAT.ANN. art. 4590i, sec. 10.01, Medical Liability And Insurance Improvement Act (Vernon Supp.1984).

We affirm.

Betty Gray, deceased, who received radium treatments for cervical cancer from appellee Dr. Rafael C. Chan from December 14, 1979 to February 13, 1980, developed urinary problems in late August, 1980, which her physician diagnosed as being caused by a hole between her bladder and her vagina. The hole between Mrs. Gray's bladder and her vagina was discovered and diagnosed as a thinning of the bladder wall by her urologist in September of 1980, although an earlier examination in August of 1980 had not revealed the problem. Her bladder was later removed and she subsequently died.

Prior to her death, Gray sued all appellees for damages allegedly caused by negligence of appellees in the application of the radium treatment to her. All appellees answered that the suit was barred by the limitations statute applicable to medical malpractice claims, sec. 10.01 of art. 4590i (Vernon Supp.1984).

The following chronology clarifies the facts important to a resolution of the question of whether the statute of limitations bars Mrs. Gray's suit:

12-14-79—Radiation treatment begun by Dr. Chan at Moncrief Radiation Center.

2-11-80—Last radiation treatment given by Dr. Chan.

2-13-80—Radiation treatment of 2-11-80 completed.

7-23-82—Dr. Chan received statutory notice of claim letter from Betty Gray.

10-6-82—Plaintiff's original petition is filed (2 years, 8 months after the date of the last treatment by Dr. Chan).

The period of limitations in medical malpractice cases is determined by TEX.REV. CIV.STAT.ANN. art. 4590i, sec. 10.01 (Vernon Supp.1984), which provides:

Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed;

. . .

Appellant contends that the notice of a claim required by sec. 4.01(a) of the Act may be given within two years from any of the following three events: (1) the occurrence of the breach; (2) the occurrence of the tort; (3) the date of completion of the health care treatment made the basis of the claim. It is undisputed that Gray's notice of her claim was given more than two years from any breach of duty on the part of any of the appellees and more than two years from the date of completion of the treatment administered to her. However, it is appellant's contention that the *last* of the three events to occur controls as to when the two-year period begins to run and that, in Mrs. Gray's case, the last of the events was the "occurrence of the tort".

Appellant argues that the tort in this case did not occur until late in August of 1980 when a hole developed in Mrs. Gray's bladder because until that time, she had suffered no damage or injury sufficient to entitle her to seek a judicial remedy. Thus, appellant says, Gray's notice to appellees, filed *within* two years from August of 1980, was timely and her suit is not barred by the limitation statute.

We disagree with appellant's contention. Initially, we note that appellant's argument assumes that only the actual development of the hole in Mrs. Gray's bladder constituted sufficient damage and that the hole did not develop until August of 1980. We find no basis in the record for the assertion that the hole did not come into existence until August, 1980. Nor do we accept appellant's arbitrary designation of the development of the hole in the bladder as the point at which "legally cognizable damage" occurred to Mrs. Gray.

Second, and most importantly, we interpret the language of art. 4590i, sec. 10.01 to mean that there are two times or events from which limitations begin to run on a health care claim: (1) from the date of the occurrence of the *breach or tort;* or, (2) from the date of completion of the medical or health care treatment (or hospitalization) made the basis of the claim. Under this interpretation of the statute, the terms "breach" or "tort" are used to designate the act or omission on which the claim is founded and not, as appellant would have us hold, the *accrual* of a right to a judicial remedy.

We believe this interpretation of the statute to be the more reasonable because by using the occurrence of a more readily ascertainable act or omission, rather than the nebulous concept of accrual of legally cognizable damage or accrual of a cause of action, the statute clarifies the determination of the time from which limitations begin to run on a health care claim. The inclusion in sec. 10.01 of the date of completion of treatment operates to extend the time before limitations commence to run in the situation where a patient receives treatment over an extended period of time, thus relieving the claimant of the burden of ascertaining the precise date during the treatment on which the negligent act or omission occurred. In our opinion, this extension of time was the only such extension contemplated by the statute; to engraft another would contravene the purpose of the Act.

The purpose of the Legislature in enacting the Medical Liability And Insurance Improvement Act was, as stated in sec. 1.02 of the Act, to alleviate a medical malpractice insurance crisis in the State of Texas caused by increased health care liability claims and judgments and the inordinate rise in the cost of medical malpractice insurance rates. The limitations statute, enacted by the Legislature, adopted an absolute two-year period which begins to run, at the latest, when the treatment upon which the claim is based is completed. Such an absolute and readily calculable period of limitations furthers the legislative purpose of alleviating the "medical malpractice insurance crisis." The only court-made exception to this absolute time period which has been recognized to date exists where there is fraudulent concealment on the part of the health care provider. *See Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex.1983). There is no contention here of the applicability of estoppel based on fraudulent concealment.

We hold that appellant's health care claim against all appellees was barred under sec. 10.01 and accordingly, we overrule appellant's first point of error.

■ In the second point of error appellant contends that art. 4590i, sec. 10.01 is unconstitutional as a denial of due process of law. In *Nelson v. Krusen,* Tex., —— S.W.2d —— (Nov. 19, 1983), the Supreme Court upheld the constitutionality of the predecessor provision of art. 4590i, art. 5.82 of the Insurance Code as against the same attack raised here by appellant. The second point of error is overruled.

We affirm.

Dissent by HILL, joined by HUGHES, JJ.

BURDOCK, J., not participating.

HILL, Justice, dissenting.

I respectfully dissent.

It is a basic principle of tort law that a tort requires: (1) a civil wrong; and (2) damage cognizable in a court of law. PROSSER, *HANDBOOK OF THE LAW OF TORTS* sec. 1 at 2 (4th ed. 1971); 1 DOOLEY, *MODERN TORT LAW LIABILITY AND LITIGATION* sec. 2.01 at 8 (1982).

Actual damages are an essential element of a cause of action for negligence. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action where an actual loss has not occurred. The threat of future harm, not yet realized, is not enough. *HANDBOOK OF THE LAW OF TORTS, supra,* at 143.

**486**

Since Mrs. Gray did not suffer any legally cognizable damage prior to August 1980, when the hole developed between her bladder and vagina, she had suffered no tort and had no cause of action prior to August 1980.

Therefore, with the tolling of the statute by her notice of claim, Mrs. Gray's case was timely filed within two years from the date of her tort in August 1980, as permitted BY TEX.REV.CIV.STAT.ANN. art. 4590i, sec. 10.01 (Vernon Supp.1984). *See Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967); *McClung v. Johnson*, 620 S.W.2d 644 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.); *Pack v. Taylor*, 584 S.W.2d 484 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.); *Sims v. Southland Corporation*, 503 S.W.2d 660 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

The majority indicates that there is no basis in the record for asserting that the hole developed no earlier than August, 1980, even though they note that Mrs. Gray's doctor observed no hole during an August, 1980 examination. They say that she suffered legally cognizable damage prior to the development of the hole, but neither they nor the appellees have enlightened us as to what those legally cognizable damages might have been.

The majority's opinion is based upon its view that the word "tort," as used in the statute, was intended to mean the "act or omission on which the claim is founded", so that it was not intended to mean "tort" in its common-law meaning. Such an interpretation is in conflict with the interpretation provisions of the Medical Liability And Insurance Improvement Act. Section 1.03(b) of art. 4590i provides that "[a]ny legal term or word of art used in this part, not otherwise defined in this part, shall have such meaning as is consistent with the common law." The interpretation of the word "tort" as "the act or omission on which the claim is founded" is not consistent with the common-law meaning of the term "tort", as previously noted.

Even if the use of the settled common-law meaning of the word "tort" were not mandated, it would be presumed under the rules of statutory construction. It has been stated that:

"The language of a statute is presumed to have been selected and used with care and deliberation. Every word or phrase is presumed to have been used intentionally, ... Ordinarily, words are presumed to have been used in the sense in which they are commonly understood. But when a word has a settled meaning or legal significance, it is presumed to have been used in that sense."

53 TEX.JUR.2d *Statutes* sec. 181 at 270–271; *Turullols v. San Felipe Country Club*, 458 S.W.2d 206 (Tex.Civ.App.—San Antonio 1970, writ ref'd n.r.e.).

It is interesting to note that the majority, in defining the word "tort", makes no reference to sec. 1.03(b) of art. 4590i, which requires that the word be given its common-law meaning, nor do they make any reference to the common-law meaning of the word "tort."

This case involves a situation wherein Mrs. Gray did not suffer legally cognizable damage until August, 1980, several months after the date of last treatment. She gave notice of her claim within two years from the time she first suffered these damages. Since such legally cognizable damage is a necessary part of a tort and of a cause of action for negligence, the claim was filed within two years of the tort. The rule urged by the majority would mean that as to those who first suffer legally cognizable damage after the last date of treatment, limitations in a cause of action for medical malpractice would begin to run prior to the existence of the tort and prior to the existence of the cause of action itself. The announced rule would, therefore, fail to give Mrs. Gray and others similarly situated the right to bring their action within two years of the date of the tort, as they have the right to do under the provisions of art. 4590i, sec. 10.01.

I would hold that the appellees failed to meet their burden of establishing as a matter of law that Mrs. Gray suffered a tort

487

prior to August 1980, and I would sustain appellant's first point of error.

I concur in the majority's disposition of the appellant's second point of error.

I would reverse the judgment of the trial court granting summary judgment and remand the case for trial.